347 So.2d 1310 (1977)
BIGLANE OPERATING COMPANY and the State Oil and Gas Board of Mississippi
v.
R.H. BROWN et al.
Nos. 49424, 49426.
Supreme Court of Mississippi.
June 22, 1977.
As Modified On Denial of Rehearing July 27, 1977.
Heidelberg, Woodliff & Franks, Kenneth I. Franks, Luther M. Thompson, A.F. Summer, Atty. Gen., by P.L. Douglas, Asst. Atty. Gen., Jackson, for appellants.
Roach & McMillan, John Gordon Roach, Jr., McComb, for appellees.
Before GILLESPIE, ROBERTSON and LEE, JJ.
GILLESPIE, Chief Justice, for the Court:
After a contested hearing in June, 1973, before the State Oil and Gas Board, the Board ordered, as requested by Biglane Operating Company's petition, that temporary special field rules be adopted authorizing 80-acre spacing in the Johnston Station Field located in Lincoln and Pike Counties. In a separate order, the Board directed as requested by Biglane, appellant, that the drilling unit of the Gall-Brown well be reformed to comply with the 80-acre spacing as required by the special field rules. Mineral and royalty owners, appellees, appealed both orders to the Circuit Court of the First Judicial District of Hinds County. The circuit court issued two separate orders which were appealed to this Court. In Biglane *1311 Operating Company v. Brown, 322 So.2d 470 (Miss. 1975), we remanded to the circuit court to decide all justiciable issues including but not limited to (1) whether special field rules were within the authority of the Oil and Gas Board to make, thereby amending Statewide Rule 7 on spacing; (2) whether special field rules created island acreage in violation of Statewide Rule 7(b); and (3) whether the evidence supported the ordering of the special field rules.
In March, 1974, the temporary special field rules were extended by order of the Board for a period of one year. In March, 1975, Biglane Operating Company petitioned for an additional extension of the special field rules. Although contested by the appellees, the Board ordered that the temporary special field rules be extended for an additional period of one year. This order was appealed to the circuit court by appellees. The circuit court consolidated the cause remanded by this Court and the temporary special field rules extension cause and held in two identical orders that (1) the Board had no authority to amend Statewide Rule 7; (2) the special field rules created island acreage; and (3) the evidence did not support the promulgation of the special rules. The present appeal by Biglane Operating Company and others (hereinafter Biglane) raises several questions.
Biglane drilled a well known as the Gall-Brown well in the SW 1/4 of the SW 1/4 of Section 36, Township 5 North, Range 7 East, of Lincoln County. This well was successfully completed as a producing oil well at a depth of about 11,000 feet. This field was designated the Johnston Station Field. Thereafter Biglane petitioned the Board requesting the Board to reform the Gall-Brown drilling unit under which Biglane was then operating on a 40-acre drilling unit into an 80-acre drilling unit, consisting of the 40 acres already in the drilling unit and the S 1/2 of the quarter-quarter section immediately to the north, and the N 1/2 of the quarter-quarter section immediately to the south. Contests were filed by the royalty owners of the minerals under the original 40-acre drilling unit. A well was drilled by other parties in the S 1/2 of the quarter-quarter section immediately to the south of the Gall-Brown quarter-quarter section. It produced about 18,000 barrels of oil and was abandoned.
In support of its petition Biglane offered in evidence a report by O'Malley Laboratories, Inc., of a core analysis of the Gall-Brown well, based on all the factors, including permeability, porosity, residual saturation values, and the thickness of the sand, which was sixteen feet.
Biglane also offered into evidence the testimony of J.W. West, a petroleum geologist, who stated that the producing zone was classified as the lower Tuscaloosa sand. West was of the opinion that the proposed 80-acre drilling unit would be drained by the Gall-Brown well. He stated that the permeabilities and the porosities in the Gall-Brown well were superior to most of the wells in the Gillsburg Field that was drilled on 80-acre spacing, and that the Gall-Brown well would efficiently drain the 80 acres and that if 80-acre spacing was not approved by the Board, economic waste would occur and unnecessary wells would be drilled.
The protestants offered the testimony of Frederick F. Mellen, a professional consulting geologist, and Leo Hines, a professional petroleum engineer. Both of these witnesses testified at length and were of a contrary opinion from that of Biglane's witness West.
On the hearing to extend the special field rules held on March 19, 1975, West again testified in some detail showing that although a summary of the O'Malley report had shown maximum recovery from the Gall-Brown unit on 40 acres would be 219.6 barrels per acre foot, it had at that time produced 299 barrels per acre foot, which was proof that the well was adequately draining the 80-acre drilling unit because it had already produced far more oil than the recoverable oil underlying the Gall-Brown unit on 40 acres.
Witness Hines also testified for the contestants at the 1975 hearing and stated that Biglane had drilled four additional wells on *1312 80-acre units to the east, north and west of the Gall-Brown well, resulting in four dry holes. He again stated that 80-acre spacing would cause waste.
Although the testimony on Biglane's petition was contested, there was substantial agreement that the productive pool in question consisted of most or all of the 80 acres included in the reformed Gall-Brown drilling unit. In other words, on an 80-acre spacing it is a one well pool, or a three well pool if the units contain 40 acres. As previously stated, several wells were drilled surrounding the land just above described and all were dry holes.

I.
Did the special spacing rule create island acreage?
The Oil and Gas Board's Statewide Rule 7 provides that "no unit shall be permitted which will create island acreage." No case is cited defining island acreage.
Island acreage means acreage surrounded by drilling units so that the island acreage cannot be produced. Protestants contend that the 20-acre tract lying immediately to the south of the Gall-Brown unit, as reformed, would be island acreage because the limits of the field run along its southern boundary. The tract in question contended to be island acreage has already been drilled insofar as the lower Tuscaloosa pool is concerned and has been abandoned. This 20-acre tract is not surrounded by other units, and we find nothing in the rules to prevent the extension of the boundaries of the field as necessary and appropriate to form a unit including the acreage claimed to be "island acreage." We are of the opinion that no island acreage was created.

II.
Was it within the power of the Board to adopt the special field rules providing for 80-acre spacing, and was the order based on substantial evidence?
The power of the Board to regulate the spacing of wells and establish drilling units is given by statute. Miss. Code Ann. § 53-1-17 (Supp. 1976). Special rules may be adopted, not inconsistent with statutory provisions, to particular areas or subject matters and such special rules prevail over statewide rules. Oil & Gas Board's Statewide Rule 1; State Oil & Gas Board v. Mississippi Mineral & Royalty Owners Association, 258 So.2d 767 (Miss. 1971).
Reference is made to the testimony already referred to which clearly made a factual issue for the Board. In Ohio Oil Company v. Porter & Skelton, 225 Miss. 55, 82 So.2d 636, 639 (1955), and numerous other cases, this Court has held that the circuit court was in error in reversing the orders of the Board when there was a conflict in the evidence on the ground that the orders were against the overwhelming weight of the evidence and not supported by substantial evidence. We refer again to California Company v. State Oil & Gas Board, 200 Miss. 824, 27 So.2d 542 (1946). It was a landmark case holding that in adopting rules and regulations the Board is acting in a legislative capacity and,
[T]herefore, the Circuit Court would be without constitutional power on appeal to substitute its own opinion as to what are proper oil conservation measures for that of the State Oil and Gas Board, on a legislative or administrative question, since the separation of executive, legislative and judicial powers, provided for by Sections 1, 2, 33, 144 and 156 of the State Constitution, forbid. 200 Miss. at 841, 27 So.2d at 545.
In the present case the Board specifically found that the proposed 80-acre unit "will promote conservation and eliminate waste and prevent the drilling of unnecessary wells and will fully protect the co-equal or correlative rights of all parties in interest."
We are of the opinion that the order reforming the Gall-Brown unit to provide for 80-acre spacing was supported by substantial evidence, was consistent with the statutes, and did not violate the constitutional rights of any parties. Therefore, the orders were not arbitrary or capricious.

*1313 III.
Was the Board's order extending the special field rules to the entire 1680 acre Johnston Station Field valid?
Mississippi Code Annotated section 53-1-3 (1972) defines "pool" and "field" as follows:
(e) "Pool" shall mean an underground reservoir containing a common accumulation of oil or gas or both. Each zone of a general structure which is completely separated from any other zone in the structure is included in the term "pool" as used herein.
(f) "Field" shall mean the general area which is underlaid or appears to be underlaid by at least one pool; and "field" shall include the underground reservoir or reservoirs containing oil or gas or both. The words "field" and "pool" mean the same thing when only one underground reservoir is involved; however, "field," unlike "pool," may relate to two or more pools.
The Johnston Station Field to which the rules apply comprises approximately 1680 acres. Between the time of the first hearing before the Board in which the special field rules were adopted and 1975 rules extension hearing, Biglane drilled four dry wells. Two dry holes were drilled adjacent to the Gall-Brown unit on the east and one adjacent to that unit on the west. The fourth dry well was drilled approximately one mile to the north of the Gall-Brown well. Based on this new information, West and Hines introduced isopachous maps which were virtually identical. These isopachous maps indicate that the area comprising the reformed Gall-Brown unit is substantially the same as the area comprising the underlying pool.
We find no indication beyond mere speculation that the lower Tuscaloosa pool from which the Gall-Brown well is producing extends beyond the area comprising the Gall-Brown reformed unit. Therefore, the order extending the special field rules to the entire 1680-acre Johnston Station Field is without evidentiary basis and the circuit court correctly reversed the State Oil and Gas in this respect, but it erred in reversing the extension of time as to the Gall-Brown 80-acre unit.
The order of the circuit court in Case No. 49,426 providing for reformation of the Gall-Brown unit and establishing special field rules is reversed and the order of the Board reinstated. The order of the circuit court in case No. 49,424 reversing the Board's order extending the field rules is affirmed in part, but is reversed as to that part of the order extending the special field rules to the Gall-Brown 80-acre unit and the said order is reinstated thereasto.
CAUSE NO. 49,426 REVERSED AND RENDERED;
CAUSE NO. 49,424 AFFIRMED IN PART AND REVERSED IN PART.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur